## Case No. 3,488.

### CURRANEE v. McQUEEN.

[2 Paine, 109.][1]

Circuit Court, Second Circuit.[2]

CONTRACTS BETWEEN MASTER AND SLAVE.

1. One held in slavery abroad, and who becomes free by being brought into the United States, in violation of the acts of congress, and afterwards remains in the service of his previous owner, cannot recover a compensation for such service upon an implied promise, but only upon an express promise to pay.

2. But if under an agreement to purchase his freedom after his arrival in this country, he has paid money to his previous owner for that purpose, he may recover back such money as having been paid without consideration.

3. The plaintiff, when brought into this country, was eleven years of age, and remained in the service of his previous owner, the defendant,

---

[1] [Reported by Elijah Paine, Jr., Esq.]

[2] [The date is not given in 2 Paine, 109; the cases therein contained were decided between 1827 and 1840.]

until he was —— years of age; at the age of twenty-five he made an agreement to purchase his freedom, and paid three hundred and twenty-five dollars towards it. *Held*, that he could recover back the money, but not for his services rendered after he was twenty-one years of age.

4. But *held*, that as this was an equitable action, and as the money was paid by the plaintiff and received by the defendant, under the impression and belief that the defendant had a right to claim the plaintiff as her slave, the latter ought not to recover interest for the money he had paid.

5. The sum recovered being under five hundred dollars, costs allowed to neither party.

[Cited in Hamilton v. Baldwin, 41 Fed. 430.]

The plaintiff [Curranee, alias Bennett], a colored man, born a slave in the Island of Jamaica, came into the state of Georgia with the defendant, she claiming and holding him as a slave, he then being a minor under the age of twenty-one years. He became of age in January, 1824, and in January, 1826, entered into an agreement with the defendant to purchase his freedom for a certain stipulated price—upon which agreement considerable sums of money were paid at various times, though not to the full amount of the stipulated purchase; and the present action is brought to recover a compensation for his services after he arrived at the age of twenty-one years, and before the agreement entered into to purchase his freedom, and also to recover back the money paid by him on the contract for his manumission.

The first question that arises in this case is, whether the plaintiff, being brought into the state of Georgia in the year 1814 or 1815, became free by operation of the act of congress of the 2d March, 1807 (4 [Bior. & D.] Laws, 94 [4 Stat. 426]), entitled "An act to prohibit the importation of slaves into any port or place within the jurisdiction of the United States, from and after the 1st day of January, in the year 1808:" that being the time limited by the constitution, in which congress have the power to prohibit the importation of slaves. By the first section of that act, it is declared that from and after the 1st day of January, 1808, it shall not be lawful to import or bring into the United States, or the territories thereof, from any foreign kingdom, place or country, any negro, mulatto or person of color, with intent to hold, sell or dispose of such negro, mulatto or person of color as a slave, or to be held to service or labor: and by the fourth section it is declared, that neither the importer nor any person claiming from or under him, shall hold any right or title whatsoever to any negro, mulatto or person of color, nor to the service or labor thereof, who may be imported or brought within the United States or territories thereof, in violation of this law; but the same shall remain subject to any regulations not contravening the provisions of this act, which the legislatures of the several states or territories at any time hereafter may make, for disposing of any such negro, mulatto or person of color. The case does not furnish any evidence that the state of Georgia has at any time passed any law at all embracing cases like the present; and, indeed, there could be no state law which would give the defendant a right to hold the plaintiff as her slave. Any such law would directly contravene the act of congress, and would be void. It follows, then, as matter of course, from this act of congress, that the plaintiff became free on being brought into Georgia, and would be no longer held there as a slave.

The next inquiry is, what were his rights on arriving at the age of twenty-one years? He clearly might have left the defendant, and she would have had no right to reclaim him, and hold him as a slave. But, according to the evidence, he voluntarily remained with the defendant. No contract or agreement of any description whatever was made between them until January, 1826; and we have only the simple, naked fact, that he remained in the service of the defendant during that time. There is, therefore, the want of any express promise to pay him for his services; and the circumstances are not such as to raise any implied promise to pay. Indeed, they repel any such implied promise, for they show that the defendant claimed and considered the plaintiff as her slave, and she cannot, therefore, be presumed to promise to pay him wages. This is the rule which governed the case of Alfred v. Marquis of Fitzjames, 3 Esp. 3, where it was held that a servant who comes from the West Indies, where he was held as a slave, and who enters into the service of his master in England without any agreement for wages, is not entitled to any, unless there has been an express promise to pay. All claim to wages, under any implied promise, arising from the mere fact of service, is excluded. We think this a sound principle, and adopt it as such, although it is not in any measure binding upon this court. The claim, therefore, to wages prior to the agreement for manumission in 1828, is not sustained; but we think the plaintiff is entitled to recover back the money paid under that agreement, on the ground that it was paid without any consideration. The case states that the money was paid by the plaintiff, and received by the defendant, under one or more agreements made by the defendant with the plaintiff to manumit and set him free, she then claiming and holding him as a slave. The pretended consideration, therefore, was the manumission of the plaintiff. It was paid towards the price of his freedom. But if he was already free under the act of congress, the right of the defendant to hold him as a slave was at an end; and she did not, and could not do any act beneficial to the plaintiff in this respect. There was, therefore, a total failure of consideration. 1 Term R. 732; 6 East. 241; 2 Bos. & P. 467. There was some parol testimony

given at the trial, of certain payments which had been made, but it was too vague and indefinite to be relied upon. The amount of the money paid must be ascertained from the written evidence in the case; and as it is a mere matter of calculation, can be made by the parties. But we think no interest ought to be recovered—not on the ground, however, that interest is not recoverable at law in an action for money had and received, as has been contended at the bar, but on the ground that this being an equitable action, a jury would have had a right, in their discretion under the circumstances of the case, to allow interest or not; and as the court in this case is substituted for the jury, we may, on the question of interest, govern ourselves by the equitable circumstances of the case. This seems to be the view taken by the supreme court of this state, in the case of Pease v. Barber, 3 Caines, 267, the court decided the general question that interest may be recovered in the action for money had and received; that there may be cases in which the defendant ought to refund the principal money, and there may be others in which he ought, ex aequo et bono, to refund the principal with interest; that each case will depend upon the justice and equity arising out of its particular circumstances to be disclosed at the trial. There was not in this case anything like oppression, or extortion, or taking an undue advantage of the plaintiff's situation. The money was paid by the plaintiff, and received by the defendant, under the impression and belief that the defendant had a right to claim the plaintiff as her slave. The judgment must, therefore, be entered for the amount of the money paid, as appearing by the documentary evidence in the cause, without interest.

NOTE [from original report]. After emancipation the slave is free as against the emancipator and all the world beside, excepting only bona fide creditors of some other person who had a better right to the slave than the emancipator. Ferguson v. Sarah, 4 J. J. Marsh. 105. Rights of creditors do not nullify the act of emancipation nor otherwise affect it, further than as a lien for the ultimate security of their debts. Id. A slave emancipated forms no part of assets in the hands of the administrator of the emancipator. The administrator has no right, either for the purpose of paying the debts or any other cause, to the possession or control of the slaves emancipated by his intestate. Id. The act of 1798 saves the rights of the creditor of the emancipator only as the statute of frauds protects the rights of the creditors. Therefore, if a creditor consents to, and urges the emancipation of a slave, he waives his right to subject him after emancipation, to the satisfaction of his debt. Id. 106. In a suit for slaves, if it be proved, whether alleged or not, that the persons in contest are free, the claimant fails. Bush v. White, 3 T. B. Mon. 105. If a fact be stated in a bill which shows that the persons claimed as slaves are free, it will be fatal, though the defendants also claim them as their property. Id. If the persons sued for as slaves, are proved to be free, and the suit fails, as to them there can be no hire recovered. Id. 106. In Massachusetts, a negro boy eight years old, who was born and reared a slave in Arkansas, came into this state with the consent of his master, as a personal attendant of his master's wife, who was here on a visit to her friends. On his being brought before the court, by habeas corpus, it appeared that the master's wife did not claim the custody of the boy as a slave here, nor intend to carry him . back to Arkansas against his will, but did intend to carry him back if he should consent to go. The court held, that the consent of so young a child would not authorize his removal into a state of slavery, and ordered him to be delivered to the guardians who had been appointed for him, by the judge of probate, under the Revised Statutes, p. 79, § 1. Com. v. Taylor, 3 Metc. [Mass.] 72. The act of South Carolina, of 1841, rendering void any bequest, &c., of slaves to be removed without the state, with a view to their emancipation; held, not to destroy the legal title of a legatee vested in slaves previous to its passage; but only to render void the condition of the bequest, that he should remove them into a free state at a period subsequent to its passage. Finley v. Hunter, 2 Strob. Eq. 208. It is competent for a slaveholder of Mississippi, during his lifetime, to take his slaves to Liberia, or elsewhere without the state, there to remain free from the condition of servitude. Ross v. Duncan, 1 Freem. Ch. 587. The statute of Mississippi, regulating the manumission of slaves, does not prohibit, either in letter or spirit, a citizen from directing by will, that his slaves should be removed out of the state to Liberia or elsewhere, even though the consequence or avowed design may be emancipation. The right to manumit slaves is not thereby taken away; its exercise within the limits of the state only is qualified. Id. Where white persons, or native American Indians, or their descendants in the maternal line, are claimed as slaves, the onus probandi lies on the claimant; but it is otherwise in respect to native Africans and their descendants who have been and are now held as slaves. Hudgins v. Wrights, 1 Hen. & M. 133. It seems that no native American Indian could be made a slave under the laws of Virginia, since the year 1691. Id. If a female ancestor of a person asserting a right to freedom, is found to have been an Indian, it seems incumbent on those who claim such person as a slave, to show that such ancestor, or some female from whom she descended, was brought into Virginia between the years of 1679 and 1691, and under circumstances which, according to the laws then in force, created a right to hold her in slavery. Id.